IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2012

## STATE OF TENNESSEE v. BRANDI NICHOLE MILLER

**Appeal from the Circuit Court for Giles County**
**No. 10085     Jim T. Hamilton, Judge**

**No. M2011-02025-CCA-R3-CD - Filed May 30, 2012**

The defendant, Brandi Nichole Miller, appeals the revocation of her probation and reinstatement of her original twelve-year sentence, arguing:  (1) that the trial court abused its discretion by revoking her probation; (2) that her due process rights were violated by the fact that the trial court relied on grounds that had formed the bases for her prior probation revocations and were not alleged in the instant revocation warrant; and (3) that the trial court erred by ordering her to serve sentences that had already expired.  Following our review, we affirm the judgment of the trial court revoking the defendant's probation and reinstating her twelve-year sentence in the Department of Correction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Richard H. Dunavant, Assistant Public Defender, for the appellant, Brandi Nichole Miller.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Beverly J. White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On March 18, 2002, the defendant pled guilty in the Giles County Circuit Court to aggravated assault and two counts of conspiracy to commit robbery, all Class D felonies, in exchange for consecutive four-year sentences for each offense, for an effective sentence of twelve years in the Department of Correction, which was suspended to supervised probation.

On March 25, 2011, the revocation warrant at issue in this case was filed alleging that the defendant had violated her probation by her arrest in Stewart County for aggravated burglary and theft under $500.

At the June 21 and August 16, 2011 revocation hearing, the defendant's Giles County probation officer, Theresa Frazier, testified that the defendant was transferred to her case load in November 2007. She said the defendant moved to Stewart County in September 2009 but then moved back to Giles County, coming back under her supervision in March 2011. Frazier stated that she filed the instant probation revocation warrant after she received the violation report prepared by the defendant's Stewart County probation officer and learned that the defendant had been charged with aggravated burglary and theft under $500 while in Stewart County. She testified that the aggravated burglary count of the indictment was subsequently dismissed but that the defendant pled guilty to the theft count, for which she received a sentence of eleven months, twenty-nine days on probation. Frazier identified a certified copy of that judgment, which was admitted as an exhibit to the hearing.

Frazier further testified that the defendant had two prior probation revocations in the case. On July 21, 2005, the defendant received a partial revocation of 180 days to serve, which was based on her failure to pay fees and her conviction for prostitution; and on March 24, 2009, the defendant received another partial revocation of six months to serve, which was based on her October 27, 2008 arrest for domestic assault in Pulaski, Tennessee, her failure to report the arrest to her probation officer, her February 3, 2009 arrest in Wilson County for driving on a revoked license, and her failure to appear in court. On cross-examination, Frazier testified that the twenty-eight-year-old defendant had one child and received social security benefits based on some kind of mental disability, the exact nature of which she was unaware.

The defendant's grandfather, David Johnson, testified that the defendant had "a little touch" of mental problems and expressed his view that her criminal history stemmed from her having associated "with the wrong crowd at the wrong time." He said that if the defendant were returned to probation, she intended to live in an apartment near his home with her four-year-old daughter, who was currently living with the child's grandmother in Stewart County.

The defendant testified that she was mentally disabled, having been diagnosed with bipolar disorder, ADD, insomnia, anxiety disorder, and personality disorder. She said she had been sexually abused at the age of seven, had started cutting herself at the age of thirteen, and had been hospitalized twelve times since 2002, including for six suicide attempts. She had tried working in the past but found that having a job was too stressful. She, therefore, supported herself and her daughter on food stamps and her SSI payments. The defendant blamed her Stewart County theft conviction on her having associated with the wrong people and promised that nothing similar would ever happen again because she did not want to risk

further separation from her beloved daughter.

On cross-examination, the defendant acknowledged that she had committed new crimes after her daughter's birth. She explained that her failure to appear in Wilson County was due to her having gotten her "court dates mixed up" and reiterated that her Stewart County theft conviction, which she said was based on her having stolen a bottle of liquor, was due to her having gotten "caught up" with the wrong people. She stated that she was not a bad person and promised that she would not "mess up again."

In its oral findings of fact issued at the conclusion of the August 16 hearing, the trial court found that the defendant had violated the terms and conditions of her probation by "continuously picking up different types of convictions in Stewart County, Maury County, and Giles County." The court, therefore, revoked the defendant's probation and reinstated her original twelve-year sentence in the Department of Correction, with credit given for time already served. That same day, the court entered a written, preprinted form probation order in which it revoked the defendant's probation and ordered that she serve the sentence previously imposed, with credit given for specific periods of time listed by the court that the defendant had already spent in jail. The court also recommended in the order that the defendant be placed in special needs as soon as possible. This appeal followed.[1]

## ANALYSIS

### I. Revocation of Probation

On appeal, the defendant argues that, in light of her "extreme mental illness" and the fact that her violation consisted of the mere theft of a bottle of liquor, the trial court abused its discretion in revoking her probation and ordering imprisonment rather than considering other sentencing alternatives. The State responds by arguing that there was substantial evidence, including the defendant's own admission of the theft and the fact that it was her third probation revocation, to support the full revocation of the defendant's probation.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2010). The revocation of probation lies within the sound discretion of the trial court. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997);

---

[1] The defendant filed her notice of appeal one day late. She then filed a motion, which was granted, requesting that this court waive the timely filing of the notice of appeal in the interest of justice.

State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment." Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

We agree with the State that the trial court did not abuse its discretion in revoking the defendant's probation and ordering her to serve the balance of her twelve-year sentence in the Department of Correction. Proof of the defendant's probation violation consisted not only of the certified copy of her theft judgment from Stewart County, but also of her own admission of her criminal behavior. Moreover, the record showed that the defendant had already been twice revoked and returned to probation based on earlier violations, and yet still continued to commit criminal acts. As such, we affirm the judgment of the trial court.

## II. Alleged Due Process Violation

The defendant next argues that her due process rights were violated by the fact that the trial court's stated reasons for revoking her probation in the instant case included Giles and Maury County matters that were not alleged in her instant warrant and which had "been dealt with in two prior revocations." The defendant asserts that this alleged due process violation was "compounded by [the court's] failure to produce the reasons for its decision in writing." The State disagrees, asserting that the trial court found that the defendant had violated her probation based on her Stewart County conviction and that it properly considered the Giles and Maury County matters, which had already been adjudicated and therefore were no longer allegations, in its decision not to return the defendant to probation. We agree with the State.

A defendant at a probation revocation proceeding is not entitled to the full array of procedural protections associated with a criminal trial. See Black v. Romano, 471 U.S. 606, 613 (1985); Gagnon v. Scarpelli, 411 U.S. 778, 786-790 (1973). However, such a defendant is entitled to the "minimum requirements of due process," including: (1) written notice of the claimed violation(s) of probation; (2) disclosure to the probationer of evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless good cause is shown for not allowing confrontation); (5) a neutral and detached hearing body, members of which need not be judicial officers or lawyers; and (6) a written statement by the factfinder regarding the evidence relied upon and the reasons for revoking probation. Gagnon, 411 U.S.

at 786; Morrissey v. Brewer, 408 U.S. 471, 489 (1972).

The defendant was given written notice that the claimed violation of her probation in the instant case was her Stewart County arrests. In addition, a certified copy of the judgment of her theft conviction was introduced as evidence at the June 21, 2011 portion of the revocation hearing, along with testimony by her probation officer about the recent Stewart County arrest and conviction and the defendant's prior revocations of probation. The defendant was also able to offer her own testimony and that of her grandfather at the hearing. At its conclusion, the parties concentrated their arguments not on whether the defendant had violated her probation by her Stewart County arrest and conviction, which appeared to be conceded by defense counsel, but instead on whether she should suffer a full or partial revocation as a consequence. Rather than making a final determination at that point, the trial court ordered the defendant to serve another sixty days in jail while it took the matter under advisement. Implicit in the court's ruling was its finding that the defendant had violated her probation by her Stewart County theft conviction:

> I'm gonna let her serve another 60 days in jail. And I'm gonna be thinking about this between now and then. And I'll make a decision on it. . . . [I]f I grant her probation, I'm probably doing her a disfavor, quite frankly, because she's gonna screw up again. It's just a matter of what she does and when she does it. So I'm gonna take it under advisement, and I'll let you know something.

At the August 16, 2011 continuation of the hearing, the defendant offered additional testimony about her mental health history before the trial court issued its final ruling in which it fully revoked her probation. The trial court stated in the ruling that it did not have "much choice except to" revoke the defendant's probation and reinstate her twelve-year sentence because she had "obviously violated" the terms and conditions of her probation by "continuously picking up different types of convictions in Stewart County, Maury County, and Giles County." Although the trial court referred to the Maury and Giles County convictions in its ruling, it is clear to this court that it based the instant revocation on the Stewart County conviction and that its reference to the Maury and Giles County convictions was merely in support of its decision to reinstate the defendant's original twelve-year sentence rather than return her to probation or some other alternative sentence. As for the trial court's failure to issue a written order detailing its findings and conclusions, this court has previously concluded that the due process requirement of a written statement is satisfied when the transcript of the revocation hearing demonstrates that the trial court "'provided adequate findings at the conclusion of the probation revocation hearing showing both the grounds for the revocation and reasons for the court's findings.'" State v. Quincy Mills, No. E2010-00519-CCA-R3-CD, 2011 WL 3568377, at *2 (Tenn. Crim. App. Aug. 15, 2011) (quoting

State v. Leiderman, 86 S.W.3d 584, 590-91 (Tenn. Crim. App. 2002)), perm. to appeal denied (Tenn. Nov. 16, 2011). We conclude, therefore, that the defendant is not entitled to relief on the basis of this issue.

### III. Reinstatement of Sentence

As her final issue, the defendant argues that the trial court lacked the authority to reinstate her original twelve-year sentence minus jail credits because two of her consecutive four-year sentences had already expired by the time her third revocation warrant was filed. She concedes that the first revocation warrant was filed prior to the completion of her first four-year sentence, but asserts that because the trial court failed to mark the "return to probation" box on the preprinted probation revocation order, "[t]he trial court evidently intended for [her] to be placed back on probation for the remainder of the original term" rather than to start her probationary period anew. Based on that assertion, she calculates that her first four-year sentence expired in May 2006.

She similarly concedes that her second revocation warrant was filed prior to the expiration of her second four-year probationary term, but again asserts that, although the "reinstate to probation" box was checked on the second revocation order, "there appear[ed] to be no intent to start [her] probation over." Based on that premise, she asserts that her second sentence therefore expired in September 2010, which means that both her first and second sentences had already expired by the time the third revocation warrant was filed on March 25, 2011.

The State disagrees, arguing that on both occasions when the trial court revoked the defendant's probation for a period of six months, it reinstated her probation following the service of her jail time, which means that the defendant failed to ever complete a full four-year probationary term prior to the instant revocation. We, again, agree with the State.

The first petition to revoke the defendant's probation was filed on June 10, 2005, before the defendant had completed her first four-year probationary sentence. On July 21, 2005, the trial court entered a preprinted revocation order in which it checked the "probation revoked" box on the form, wrote in the date of "7-21-05" as the effective date of the probation revocation, and filled in "180 days" under the "Partial Revocation" box of the form. Although the trial court did not specifically state on the order that the defendant was to be placed back on probation for the entire probationary term, it is logical to assume that is what was intended. Moreover, as the State points out, the defendant failed to include the transcript of the revocation hearing, which, presumably, would have cleared up any potential confusion in the written order. It is the duty of the appealing party to prepare an adequate record for appellate review, see Tenn. R. App. P. 24(b), and in the absence of an adequate record, this court must

presume that the trial court's actions are correct. <u>State v. Oody</u>, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

The second petition to revoke was filed on November 20, 2008, which was still prior to the expiration of the first four-year probationary term. Once again, the trial court entered a preprinted revocation order, on March 24, 2009, stating that the defendant's probation was partially revoked with the defendant ordered to serve six months in the county jail. On this order, the trial court checked the "reinstate to probation" box on the form.

Finally, the petition to revoke in the case at bar was filed on March 25, 2011, which means that the defendant failed once again to complete a full four-year probationary term. As the State correctly notes in its brief, the time served on probation does not count toward completion of a sentence unless the defendant successfully completes the entire probationary term. <u>See</u> <u>State v. Hunter</u>, 1 S.W.3d 643, 646 (Tenn. 1999). We conclude, therefore, that the trial court had the authority to reinstate the defendant's original twelve-year sentence upon the revocation of her probation.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the defendant's probation and ordering her to serve the balance of her twelve-year sentence in confinement.

_____
ALAN E. GLENN, JUDGE